IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LORI WEEKS | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:11CV157-HSO-JMR |
| | § | |
| HUNTINGTON INGALLS | § | |
| INCORPORATED, *formerly known as* | § | |
| NORTHROP GRUMMAN | § | |
| SHIPBUILDING, INC. and | § | |
| JOHN DOES 1–5 | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the Motions for Summary Judgment [52] and to Strike [63] filed by Defendant Huntington Ingalls Incorporated, formerly known as Northrop Grumman Shipbuilding, Inc., on July 16, 2012, and September 7, 2012, respectively. Both Motions are fully briefed. After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that Defendant's Motion to Strike should be granted in part and denied in part, and that its Motion for Summary Judgment should be denied.

### I. BACKGROUND

The core facts are not in dispute here. Plaintiff applied for a position with Defendant as a cable puller on or about May 8, 2008, at Defendant's shipyard in Pascagoula, Mississippi. Pl.'s Employ't Appl., at pp. 1–2, attached as Ex. "A" to Def.'s Mot. for Summ. J. [52]. As part of the application process, Plaintiff and other applicants were required to undergo a cable pulling assessment. This test was

developed by Defendant and the International Brotherhood of Electrical Workers ("IBEW"), Local 733, to determine if applicants could perform the essential duties of a cable puller.  Def.'s Resps. to Pl.'s Interrogs. and Reqs. for Prod., at p. 3, attached as Ex. "C" to Def.'s Mot. for Summ. J. [52]; *see also* Dep. of Louis Bond, at p. 64, attached as Ex. "G" to Pl.'s Resp. [58].  Plaintiff alleges that she sustained physical injuries while attempting to perform this test.  There is no dispute that Plaintiff was not an employee of Defendant at the relevant time.  She claims that the test was designed, set-up, or maintained in such a way that it not only posed a danger of causing foreseeable injuries to persons taking this test, but that such injury was a likelihood.  Am. Compl. [4], at p. 2.  Plaintiff essentially contends that there was a bend in the cable during the test that made it impossible for her to pass, and which caused her injuries.

Plaintiff Lori Weeks filed her Complaint [1-2] in the Circuit Court of Jackson County, Mississippi, on or about March 11, 2011, for the injuries she purportedly sustained during the cable pulling test.  Compl. [1-2], at p. 2.  Defendant removed the case to this Court on or about April 7, 2011, invoking this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  Notice of Removal [1], at pp. 1–2. Plaintiff filed an Amended Complaint [4] on April 19, 2011, advancing claims against Defendant for negligence, gross negligence, and reckless indifference in the design, setup, and/or maintenance of the cable pulling test.  Am Compl. [4], at p. 2.[1]

---

[1]The Amended Complaint named Northrop Grumman Shipbuilding, Inc., and Northrop Grumman Systems Corporation, as Defendants. Am. Compl. [4], at p. 1. The Court entered an Order [21] on December 1, 2011, which dismissed Northrop Grumman Systems Corporation and amended the case caption to reflect the proper party Defendant as

Plaintiff contends that the test "posed not only a danger of causing foreseeable injuries to persons testing for the position, but that such injury was a likelihood." *Id.* She charges that Defendant "failed to exercise reasonable and ordinary care to keep the test reasonably safe, or warn of dangers associated with the test not readily apparent" to her, of which Defendant knew or should have known. *Id.* Plaintiff seeks recovery for past, present, and future medical expenses; past, present, and future physical, mental, and emotional pain and suffering; mental anguish; loss of enjoyment of life; past, present, and future lost wages; and punitive or exemplary damages, "together with all penalties and interest which may be applicable." *Id.* at p. 3. Defendant now moves the Court to grant summary judgment on all of Plaintiff's claims asserted against it. Because genuine disputes of material fact remain, the Court is of the opinion that summary judgment is inappropriate.

## II. DISCUSSION

A.  Defendant's Motion to Strike [63]

Defendant moves to strike Exhibit "3" to Exhibit "B" and Exhibit "H" attached to Plaintiff's Response [58] to its Motion for Summary Judgment [52]. Defendant contends that Exhibit "3" to Exhibit "B," the 30(b)(6) Deposition of Defendant (through Mark Scott), consists of documents and statements which were not originally exhibits to the deposition. Def.'s Mot. to Strike [63], at pp. 2–3. It maintains that Exhibit "3" to the deposition contained only four (4) photographs, which are also attached as Exhibit "H" to the Response and to which Defendant also

―――――――――――

"Huntington Ingalls Incorporated, formerly Northrop Grumman Shipbuilding, Inc." Order [21], at p. 1.

objects. *Id.* Plaintiff concedes that, due to clerical error, extra pages were included in Exhibit "3" to the deposition. Pl.'s Resp. [65], at p. 2 n.4. She states that "[t]he actual exhibit 3 is only four pages, consisting of photographs of Plaintiff's bruising after the accident." *Id.* Accordingly, to the extent Defendant asks that pages 5 through 19 of Exhibit "3" to Exhibit "B" be stricken, this request will be granted. These pages correspond to pages 29 through 43 of document [58-3].

As for the remaining four (4) pages of Exhibit "3," which are also contained in Exhibit "H," Defendant asserts that these photographs should be stricken because "[n]o proper foundation has been laid for their introduction into evidence, no chain of custody has been established, and they are simply too unreliable to be considered." Def.'s Mot. to Strike [63], at p. 2. Defendant relies on Federal Rule of Civil Procedure 56(c) and the Advisory Committee Notes thereto, and argues that these photographs are not credible evidence, would not be admissible at trial, and should not be considered in these summary judgment proceedings. Def.'s Rebuttal [68], at pp. 2–3. Plaintiff argues that her sworn deposition testimony demonstrates that her husband took the photographs within weeks of the accident, and she responds that Defendant's objections are more properly considered at trial. Pl.'s Resp. [65], at pp. 1–2.

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). The Advisory Committee Notes regarding this subsection reads as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56 advisory committee's notes.

Rule 56 does not require that evidence presented at the summary judgment stage be in admissible form at that time, but instead provides that it must be capable of submission in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Plaintiff has presented evidence that her husband took the photographs at issue here, Dep. of Lori Weeks [58-1], at p. 33, attached as Ex. "A" to Pl.'s Resp. [58], and has met her burden of showing that the photographs are capable of being presented in a form that would be admissible in evidence, FED. R. CIV. P. 56(c)(2). To the extent Defendant asks the Court strike the four (4) photographs contained in Exhibit "3" to Exhibit "B," and in Exhibit "H," its request will be denied. Even if the Court struck the disputed photographs, however, this would not alter its resolution of Defendant's Motion for Summary Judgment [52].

B.  Defendant's Motion for Summary Judgment [52]

   1.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America*, 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson,* 477 U.S. at 248). "The court has no duty to search the

record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

The Court's jurisdiction in this case is premised upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity action, a federal court applies state substantive law. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). The parties agree that Mississippi substantive law governs.

2. Analysis

Defendant first asserts that any Title VII claims which Plaintiff may be raising are barred by the applicable statute of limitations. Def.'s Mem. in Supp. of its Mot. for Summ. J. [53], at pp. 10–12. Defendant next argues that Plaintiff cannot show that it breached any duty or was otherwise negligent. It contends that the cable pulling test was administered by an employee of the State of Mississippi. *Id.* at p. 12. Defendant further maintains that Plaintiff's negligence claims are essentially premises liability claims, and should be dismissed according to principles of Mississippi law. *Id.* at pp. 12–16. Plaintiff responds that she is not pursuing a Title VII claim, and that genuine issues of material fact exist which preclude summary judgment on her other claims.

a. Title VII

Plaintiff filed a Charge of Discrimination [52-7] with the Equal Employment Opportunity Commission ["EEOC"] on or about August 5, 2008, alleging discrimination based upon her sex (female) in the administration of the cable pulling

test, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. EEOC Charge [52-7], attached as Ex. "G" to Def.'s Mot. for Summ. J. [52]. From the face of Plaintiff's Complaint and Amended Complaint, however, the Court cannot conclude that Plaintiff has asserted any claim for a violation of Title VII. It is also beyond dispute that any such claim would be time barred. *See* 42 U.S.C. § 2000e-5(f)(1) (requiring civil action to be filed within 90 days of receiving EEOC right to sue letter). The EEOC issued its Dismissal and Notice of Rights on June 29, 2009. Plaintiff did not file her original Complaint until on or about March 11, 2011. Compl. [1-2], at p. 1.

Defendant also maintains that Plaintiff's personal injury suit is a "back door attempt to revive her long-since prescribed Title VII claims." Def.'s Mem. in Supp. of its Mot. for Summ. J. [53], at p. 12. It argues that all allegations which "sound of Title VII" are barred and should be summarily dismissed. *Id.* While Plaintiff does state in her Amended Complaint [4] that "this specific cable puller test was designed so that it was virtually impossible for a woman such as Ms. Weeks to complete," Am. Compl. [4], at p. 2, the Court cannot agree that Plaintiff's negligence claims "sound of Title VII." To the extent that Defendant seeks to exclude certain testimony, exhibits, or references at trial, the Court will consider any such request upon a proper motion *in limine* or specific objection in the pretrial order and/or at trial. However, because Plaintiff has asserted no Title VII claim, summary judgment in Defendant's favor would be inappropriate on this issue.

b. <u>Plaintiff's Negligence Claims</u>

Defendant argues that Plaintiff cannot assert a negligence claim against it regarding administration of the cable pulling test because the test was administered by an employee of the State of Mississippi. Def.'s Mem. in Supp. of its Mot. for Summ. J. [53], at p. 12. Plaintiff counters that the test was performed on Defendant's property, and in the presence of Theresa Jones King, an employee of Defendant supplied for quality control purposes. Pl.'s Resp. [58], at pp. 1–2. According to Plaintiff, the purported State employee, Warren Howard, was in reality an employee of Defendant. *Id.* at p. 9.

(i). <u>Vicarious Liability Claims</u>

To the extent Plaintiff advances a *respondeat superior* or vicarious liability theory of liability on the basis of Mr. Howard's purported negligence, Defendant argues that Mr. Howard was not one of its employees. An employer is liable for the torts of its employee under certain circumstances. The inquiry focuses on whether, from the nature of the act itself, it was an act done in the master's business, or whether it was wholly disconnected from such business by the servant, as an individual on his own account. *Commercial Bank v. Hearn*, 923 So. 2d 202, 207 (Miss. 2006) (quoting *Gulledge v. Shaw*, 880 So. 2d 288, 295 (Miss. 2004)).

There is no real dispute that Mr. Howard was an employee of Mississippi Gulf Coast Community College. However, Mississippi law recognizes that one may be a "borrowed employee," or may have "dual employment," with two employers. *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). The general rule

is that "if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he had been lent, although he remains the general servant of the person who lent him." *Id.* (quoting *Runnels v. Burdine*, 106 So. 2d 49, 51 (Miss. 1958)).

As for whether Mr. Howard could be considered an "agent" of Defendant, the Mississippi Court of Appeals has explained that

> [a]n agent is one who stands in the shoes of his principal; he is his principal's alter ego. An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by his authority. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. 2 C.J.S. *Agency* § 1 c (1936). The most characteristic feature of an agent's employment is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities. *First Jackson Securities Corp. v. B.F. Goodrich Company*, 253 Miss. 519, 532-33, 176 So. 2d 272, 278 (1965).

*Bailey v. Worton*, 752 So. 2d 470, 474 (Miss. Ct. App. 1999).

Plaintiff has presented evidence that, even though Mr. Howard was not Defendant's actual employee, he was arguably on loan on a temporary basis and was subject to Defendant's control, such that he was or could have been Defendant's servant or agent. Mr. Howard testified that his supervisor at the shipyard had control of his day to day activities there, and that, if the supervisor wanted someone like himself terminated, he was "sure it would" happen. Dep. of Warren Howard, at pp. 7–9, attached as Ex. "C" to Pl.'s Resp. [58].

Defendant's Rule 30(b)(6) representative, Mark Scott, testified that, through

-10-

Mississippi Gulf Cost Community College's memorandum of understanding with Defendant, instructors like Mr. Howard reported to work at Defendant's facility on a daily basis and worked at the direction of an employee of Defendant. 30(b)(6) Dep. of Defendant (through Mark Scott) [58-2], at pp. 58–63, attached as Ex. "B" to Pl.'s Resp. [58]. Mr. Scott further indicated that the instructors were required to work within Defendant's policies and procedures, and had no authority to deviate from them. *Id.* He explained that the State paid a flat rate through the college for Mr. Howard's salary and benefits. The college, in turn, billed Defendant.

The record reflects that the cable pulling test procedure was developed by the IBEW Local 733 union and the management in Defendant's electrical department, and that Mr. Howard had "[n]o input at all" on how the test was constructed. *Id.* at p. 12. Mr. Howard was not the primary administrator of the test. Dep. of Warren Howard, at pp. 13–14, attached as Ex. "C" to Pl.'s Resp. [54]. Nor were instructors from the community college the ones who always administered it. The record reflects that Defendant's employment office would obtain whomever was available to administer the test when it needed to be performed, regardless of whether it was Mr. Howard or someone from management in Defendant's electrical department. *Id.* Defendant utilized the same test procedures, pursuant to written guidelines. *Id.* Mr. Howard testified that the cable pulling test remained "set up" and was not reconfigured for each test that was administered. *Id.* at pp. 17–18.

Based upon the record evidence, fact questions remain regarding Mr. Howard's employment or agency status, such that summary judgment on this issue

would be inappropriate. *See, e.g., Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 166 (Miss. 2009) ("The determination of whether an agency relationship existed is a question of fact for the jury") (citation omitted); *Savory v. First Union Nat. Bank of Delaware*, 954 So. 2d 930, 933 (Miss. 2007) (conflicting evidence regarding agency relationship creates fact question for jury determination); *Russell v. Orr*, 700 So. 2d 619, 623–24 (Miss. 1997) (employment status is fact question). Defendant has not carried its initial summary judgment burden on Plaintiff's vicarious liability theory.[2]

        (ii).   <u>Direct Liability Claims</u>

Defendant attempts to characterize Plaintiff's direct negligence claims against it as ones sounding in premises liability. Plaintiff argues for the application of general, common law negligence standards.

The Mississippi Supreme Court has explained that, to determine whether a cause of action falls under a general theory of negligence or a specific type of negligence depends upon the specific facts that gave rise to the claim. *Id.* at 1166. When a plaintiff is injured by a property owner's employees, there is no premises liability claim, but a basic negligence claim. *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165–66 (Miss. 2011) (citing *Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008)). When a plaintiff is injured by a third party on the premises, or by activities

---

[2]Plaintiff also claims that Defendant is liable for the negligence of its employee Theresa Jones King, who was present during the test. *See, e.g.,* Pl.'s Resp. [58], at p. 2; 30(b)(6) Dep. of Defendant (through Mark Scott) [58-2], at pp. 23–24, attached as Ex. "B" to Pl.'s Resp. [58](testifying that King was present at the cable pulling test for quality control purposes, which included ensuring a safe environment for the applicants, and correcting any additional danger posed if something is wrong with the testing). Because Defendant did not address this claim in its Motion for Summary Judgment, the Court need not consider it here.

occurring on the premises, and the property owner's employees are not aware of the injured party's presence on the premises, the claim is one for premises liability. *Id.* at 1166. "Premises liability is a theory of negligence that establishes the duty to someone injured on a landowner's premises as a result of 'conditions or activities' on the land." *Id.* at 1165 (quoting *Doe v. Jameson Inn, Inc.*, 56 So. 2d 549, 553 (Miss. 2011)). At this juncture, in the context of the facts of this case, the Court views this as a distinction without a difference, as summary judgment is inappropriate under either theory.

"The elements of a prima facie case of negligence are duty, breach, causation, and damages." *Duckworth v. Warren*, 10 So. 3d 433, 440 (Miss. 2009) (quoting *Todd v. First Baptist Church of West Point*, 993 So. 2d 827, 829 (Miss. 2008)). "Mississippi has long imposed on every person who undertakes an action a duty of reasonable care to protect against causing injury to others . . . ." *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 148 So.2d 199, 201 (1962)). This duty requires that precautions be taken against foreseeable risks. *Id.*

To recover damages in a premises liability action, a plaintiff must establish: (1) a duty owed to the plaintiff by the property owner; (b) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the plaintiff's injuries. *Double Quick, Inc.*, 73 So. 3d at 1166 (citing *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994)). In order to ascertain the duty owed by a business

owner, a court must determine the status of the injured party. *Id.* The injured party is classified as an invitee, licensee, or trespasser. *Id.* Defendant does not dispute that Plaintiff, who was applying for a job, was an invitee on Defendant's property.

"Under Mississippi law, a property owner is not the insurer of an invitee's safety. Rather, he owes a duty to the invitee to keep the premises reasonably safe and, when not reasonably safe, to warn only of hidden dangers not in plain and open view." *Id.* (citing *Corley v. Evans*, 835 So. 2d 30, 38–39 (Miss. 2003)). However, "[i]n every premises-liability case, the plaintiff must show that a dangerous condition exists." *McCullar v. Boyd Tunica, Inc.*, 50 So. 3d 1009, 1012 (Miss. Ct. App. 2010) (citation omitted). In addition,

> [t]he plaintiff must also show: (1) a negligent act by the defendant caused the dangerous condition; or (2) the defendant had actual knowledge of the dangerous condition but failed to warn the plaintiff; or (3) the dangerous condition remained long enough to provide the defendant with constructive knowledge.

*Id.* (citation omitted).

Where an invitee knows, or should know, of an apparent danger, no warning is required. *Tate v. Southern Jitney Jungle Co.*, 650 So. 2d 1347, 1350 (Miss. 1995) (citations omitted).

Defendant contends the condition alleged here, the bend in the cable, was not an unreasonably dangerous condition because it was "usual" and expected on the premises during the cable pulling test. Def.'s Mem. in Supp. of its Mot. for Summ. J. [53], at pp. 13–15. It further insists that it owed no legal duty to warn of a dangerous condition which Plaintiff cannot prove existed, and that because the bend

-14-

was readily apparent to Plaintiff, it had no duty to warn.  *Id.* at p. 16; Def.'s Rebuttal [63], at pp. 12–13.  Plaintiff responds that these are fact questions reserved for a jury.  Pl.'s Resp. [58], at pp. 12–13.

Plaintiff has submitted evidence that Defendant did not provide Plaintiff, or any other applicants taking the test with her, with a demonstration regarding how to pull the cable during the test.  Dep. of Lori Weeks [58-1], at pp. 21, 24, attached as Ex. "A" to Pl.'s Resp. [58]; *see also* 30(b)(6) Dep. of Defendant (through Mark Scott) [58-2], at p. 23, attached as Ex. "B" to Pl.'s Resp. [58] (testifying that it is Defendant's policy for the tester to physically demonstrate the testing for the applicants).  The record further reflects that, for the most part, those who took the test did not have a cable pulling background because it is an unskilled, entry level position.  For this reason, Defendant would not expect applicants to be aware of the natural bending of a cable, and would expect the instructors to inform them about it. Dep. of Defendant (through Mark Scott) [58-2], at pp. 27, 30, attached as Ex. "B" to Pl.'s Resp. [58].

Mr. Scott testified that, had the applicants not been aware of the bend, the test would have been more difficult, depending upon the angle of the bend.  *Id.* at 31. Plaintiff presented evidence that, on the day of her test, the cable had a 45 to 90 degree bend in it.  Dep. of Louis Bond, at p. 63, attached as Ex. "G" to Pl.'s Resp. [58].  Mr. Scott stated that a 45 degree angle would not be a reasonable bend, that "[i]t would be odd," *id.* at 33, and that if it existed, he would expect quality assurance personnel to "go over the process for correcting the unreasonable bend prior to the

pull," *id.* at 41. If the instructor and observer of the test had knowledge of a dangerous condition, "they would have had an obligation to go over that," and to warn the applicants, *id.* at 39–40, as the test "would be safer without an unreasonable bend," *id.* at 42. According to Plaintiff, the instructor that day did not offer a demonstration to any of the applicants in her group on how to pull the cable. Dep. of Lori Weeks [58-1], at pp. 21, 24, attached as Ex. "A" to Pl.'s Resp. [58].

Reviewing the evidence presented in the light most favorable to Plaintiff, the Court is of the opinion that there remain genuine disputes of material fact. These disputes include, but are not limited to, the extent, if any, of a bend in the cable, whether any bend in the cable was a dangerous condition, whether Defendant caused the dangerous condition or had knowledge of it and failed to warn Plaintiff, and whether Plaintiff knew or should have known of the dangerous condition, such that Defendant was not required to warn Plaintiff. Because of these factual disputes, summary judgment would be inappropriate under either a premises liability or a general negligence theory.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike should be granted in part and denied in part, and its Motion for Summary Judgment should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion to Strike [63] filed by Defendant Huntington Ingalls Incorporated, formerly known as Northrop Grumman Shipbuilding, Inc., on September 7, 2012, is **GRANTED IN PART AND DENIED IN PART**. Pages 5

through 19 of Exhibit "3" to Exhibit "B" to Plaintiff's Response [58], which correspond to pages 29 through 43 of document [58-3], are stricken from the record.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Summary Judgment [52] filed by Defendant Huntington Ingalls Incorporated, formerly known as Northrop Grumman Shipbuilding, Inc., on July 16, 2012, is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 31st day of October, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE